| | |
|---|---|
| DISTRICT COURT JEFFERSON COUNTY, COLORADO<br>100 Jefferson County Parkway<br>Golden, CO  80401<br><br><br>**PLAINTIFF:** CARMEN HERNANDEZ<br><br>v.<br><br>**DEFENDANTS:**  UNITED BUILDERS SERVICE, INC.,<br>and<br>EDGAR SAMUEL MONTOYA MARTINEZ d/b/a<br>MASTERS DRYWALL INSTALLERS, | DATE FILED: June 14, 2018 3:35 PM<br>FILING ID: 2C2D6151A0EE3<br>CASE NUMBER: 2018CV30960 |
| Attorneys for Plaintiffs:<br><br>Andrew H. Turner, Atty. Reg.  #43869<br>M. Jeanette Fedele, Atty. Reg. #47256<br>**THE KELMAN BUESCHER FIRM**<br>600 Grant Street, Suite 450<br>Denver, CO  80203<br>Phone Number: 303.333.7751<br>Fax Number: 303.333.7758\<br>aturner@laborlawdenver.com<br>jfedele@laborlawdenver.com | Case Number:<br><br><br><br><br><br><br>Ctrm/Div: |
| **COMPLAINT** | |

      Carmen Hernandez, on behalf of herself and all those similarly situated, by and through her counsel of record, hereby submits this Class Action Complaint against Defendants United Builder Services, Inc. and Edgar Samuel Montoya Martinez, d/b/a Masters Drywall Installers, Inc. (collectively "Defendants") for failure to pay full wages or compensation.  Plaintiff Hernandez brings additional individual claims of sex-based discrimination, harassment, and retaliation, in violation of state and federal anti-discrimination statutes, against Defendants.

## STATEMENT OF THE CASE

1. On May 8, 2017 the costliest recorded hail storm in Colorado history hit the Colorado Mills Mall, located in Lakewood, Colorado ("Mall").  The massive storm was reported to have caused insurance losses of between $1.4 and $2.3 billion.  The Mall was closed for over six

**EXHIBIT A**

months.   Reconstruction contracts worth many millions of dollars brought hundreds of construction workers to the Mall.  It was there that Defendants employed the Plaintiff Carmen Hernandez during 2017.

2. Plaintiff Hernandez and over 200 other construction laborers were jointly employed by Defendants Master Drywall Installers ("MDI") and United Builder Services, Inc. ("UBS") to preform arduous, manual construction labor.  MDI recruited hundreds of workers for the Colorado Mills Mall job and delivered them to UBS, which describes itself as "one of the largest drywall contractors in the United States."  http://unitedbuilders.com (June 13, 2018).  MDI on the other hand is not an LLC, Corporation nor any recognized business form – but rather a trade name registered to individual Defendant Edgar Samuel Montoya Martinez.  UBS provided drywall installation services for the Colorado Mills Mall project but acknowledged its employment of a very small proportion of the the hundreds of drywall workers it supervised at the project.  Rather UBS relied on multiple labor sub-contractors like MDI to provide it with the laborers executing the drywall services UBS sold, provided, directed and supervised.  Upon information and belief, the Defendants were able to provide these services at low cost and high profit because undercapitalized labor sub-contractors like MDI paid the workers in cash and reported neither the workers' chargeable wages nor their employment to taxation authorities such as the Colorado Department of Labor and Employment, Division of Unemployment Insurance.

3. MDI and UBS jointly directed and controlled the work performed by Plaintiff Hernandez and over 150 other workers on the Colorado Mills Mall project.  Upon information and belief, Defendant MDI ordinarily paid them in cash.

4. Upon information and belief, neither MDI nor UBS reported the chargeable wages nor the employment of Plaintiff Hernandez and others similarly situated to the Colorado Department of Labor and Employment, Division of Unemployment Insurance and neither Defendant paid required unemployment insurance premiums for these workers. C.R.S. § 8-76-101, *et. seq.*  As a result, Plaintiff Hernandez and other class members were not credited for base period wages necessary to qualify for Unemployment Insurance Benefits.  C.R.S. § 8-73-107(1)(e).

5. During her employment by Defendants at the Colorado Mills Mall project, Plaintiff Hernandez suffered sexual harassment by male co-workers.  When she reported this harassment, her UBS and MDI supervisors failed to adequately redress it, instead retaliating against Ms. Hernandez for making these reports.  Defendants' retaliation against Ms. Hernandez culminated in her termination from employment.

6. Ms. Hernandez suffered a period of unemployment following her termination. She was ineligible for Colorado Unemployment Insurance benefits.  Her reported base period wages did not satisfy eligibility requirements.  C.R.S. § 8-73-107(1)(e).  Defendants reported neither her wages nor the fact of her employment to the Colorado Division of Labor and Employment's Unemployment Insurance Division.

7. This class action arises under the Colorado Wage Claim Act, C.R.S. § 8-4-101 et. seq. Plaintiff Hernandez alleges that Defendants MDI and UBS failed to pay her full "wages or

**EXHIBIT A**

compensation" because they failed to report her and other employees' employment and chargeable wages earned in required Unemployment Insurance Tax Returns and further failed to pay required unemployment insurance premiums for these workers. She makes these claims on behalf of a class of "all individuals MDI employed as construction laborers at the Colorado Mills Mall project during 2017" ("others similarly situated" or "similarly situated employees") because Defendants failed to pay them all required compensation in the same manner.

8.   Individually, Hernandez brings a cause of action for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII") and the Colorado Anti-Discrimination Act, C.R.S. § 24-34-401 *et seq*., to remedy Defendants' unlawful actions in subjecting her to discriminatory employment actions and a hostile work environment because of her sex, and retaliating against her for complaining of discrimination.

## THE PARTIES

9.   Plaintiff, Carmen Hernandez was employed by Defendants from approximately August 15, 2017 through October 13, 2017. She is a current resident of Texas who was formerly domiciled in Denver, Colorado, during her employment with Defendants.

10. Defendant Masters Drywall Installers (MDI) is a trade name registered to individual Defendant Edgar Samuel Montoya Martinez. MDI operated in Colorado in 2017 providing laborers for the Colorado Mills Mall construction site in Lakewood, Colorado. Edgar Samuel Montoya Martinez d/b/a MDI lists his principal business address with the Colorado Secretary of State as 2516 Northview Dr., Mesquite, TX 75150.

11. Defendant United Builders Service, Inc. (UBS) is a for-profit corporation incorporated in the state of Colorado and registered to do business in Colorado. In 2017 Defendant UBS worked on the Colorado Mills Mall construction site in Lakewood, Colorado. Defendant UBS has its principal place of business at 11025 Dover St., Unit 100, Westminster, CO 80021.

12. At all relevant times, Defendant UBS has continuously been and is now doing business in the State of Colorado as a drywall installation contractor, and it has continuously had at least twenty-five employees.

13. At all relevant times, Defendant UBS has continuously been an employer engaged in an industry affecting commerce under Section 701(b), (g) and (h) of Title VII, 42 U.S.C. § 2000e-(b), (g) and (h).

14. At all relevant times, Defendant MDI has continuously been and is now doing business in the State of Colorado as a construction contractor, and it has continuously had at least twenty-five employees.

15. At all relevant times, Defendant MDI has continuously been an employer engaged in an industry affecting commerce under Section 701(b), (g) and (h) of Title VII, 42 U.S.C. § 2000e-(b), (g) and (h).

**EXHIBIT A**

## JURISDICTION AND VENUE

16. This Court has jurisdiction over the parties and subject matter of this action pursuant to The Colorado Long-Arm Statute, C.R.S. § 13-1-124; the Colorado Anti-Discrimination Act, C.R.S. § 24-34-401 *et seq.*; and Title VII, 42 U.S.C. § 2000e-5(f)(3); *see also Yellow Freight Sys, Inc. v. Donnelly*, 494 U.S. 820, 286 (1990).

17. Venue in this Court is proper pursuant to Colo. R. Civ. P. 98 because Defendant UBS resides in this County, both Defendants conducted business in this County, and the action arises out of events that occurred in this County.

## STATEMENT OF FACTS

18. At all relevant times, Defendants UBS and MDI jointly employed Plaintiff Hernandez and all other similarly situated employees, or in the alternative, acted as a single integrated enterprise.

19. Defendant UBS relied on and controlled the work of the MDI employees. MDI delivered over 150 construction laborers to the Colorado Mills Mall construction project site ("Mall site"). It was the MDI employees who provided the service UBS had contracted to provide at the Mall site. The MDI employees were an integral and indispensable part of UBS' business at the Mall site.

20. UBS supervisors directed and controlled all aspects of the MDI employees' day. The UBS supervisors oversaw the laborers' signing in and out for work; UBS made the work schedules, and directed laborers as to which crew they would work with and assigned the tasks laborers were to complete each day. UBS supervisors reviewed the laborers' work and assigned laborers to make revisions (go-backs) as necessary. The UBS supervisors controlled and directed the laborers' work without getting input or seeking guidance from MDI.

21. UBS provided the MDI employees with necessary construction materials and equipment such as lifts and booms, including scissor lifts.

22. UBS supervisors reviewed the MDI employees' sign in/out sheets to ensure that they recorded their time correctly.

23. UBS controlled access to the job site, providing safety and security services to the MDI employees. UBS provided a safety coordinator at the Mall site. Plaintiff Hernandez was supervised by UBS personnel. She brought her complaints of sexual harassment to the attention of the UBS safety coordinator and other UBS supervisors. MDI supervision was not consistently available to Ms. Hernandez nor to other similarly situated workers. It was UBS personnel that took and responded to Ms. Hernandez's complaints of sexual harassment.

**EXHIBIT A**

24. Upon information and belief, having reviewed and confirmed the hours of the MDI employees, UBS made payments to MDI for the hourly labor of Plaintiff Hernandez and others similarly situated.  Defendant MDI then paid Plaintiff and others similarly situated on an hourly basis in cash.

25. Neither MDI nor UBS reported the chargeable wages nor the employment of Plaintiff Hernandez and others similarly situated to the Colorado Department of Labor and Employment, Division of Unemployment Insurance and neither Defendant paid required unemployment insurance premiums for these workers.  As a result, Plaintiff Hernandez and other class members were not credited for base period wages necessary to qualify for Unemployment Insurance Benefits.

26. Ms. Hernandez suffered a period of unemployment following her termination. She was ineligible for Colorado Unemployment Insurance benefits.  Her reported base period wages did not satisfy eligibility requirements.  Defendants reported neither her wages nor her employment to the Colorado Division of Labor and Employment's Unemployment Insurance Division.

27. This class action arises under the Colorado Wage Claim Act, C.R.S. § 8-4-101 *et seq*. Plaintiff Hernandez alleges that Defendants MDI and UBS failed to pay her full "wages or compensation" because they failed to pay required unemployment insurance premiums for these workers.  She makes these claims on behalf of a class of "all individuals employed by MDI as construction laborers on the Colorado Mills Mall Project during 2017" ("similarly situated employees") because Defendants failed to pay other similarly-situated employees' all required wages or compensation in the same manner.

28. Whenever in this Complaint it is alleged that any Defendant did any act or thing, it is meant that the Defendant's officers, agents, servants, employees or representatives did such act and/or that at that time such act was done, it was done with the full authorization or ratification of Defendant or was done in the normal and routine course and scope of employment of Defendant's officers, agents, servants, employees, or representatives.

29. Defendant UBS is vicariously liable for the conduct of its employees.

30. Defendant MDI is vicariously liable for the conduct of its employees.

31. Plaintiff Hernandez timely filed a charge of discrimination and retaliation against Defendant UBS and Defendant MDI with the EEOC on or about October 18, 2017.  Ms. Hernandez dual-filed her Charge with the Colorado Civil Rights Division on the same day.  More than 180 days have expired since Plaintiff filed her charge of discrimination with the EEOC.

32. Ms. Hernandez received a Notice of Right to Sue from the EEOC concerning both Defendant MDI and Defendant UBS (attached hereto as Plaintiff's Exhibit 1).

**EXHIBIT A**

33. Plaintiff is filing this action within 90 days of her receipt of the first Notice of Right to Sue issued to her by the EEOC.  Accordingly, all conditions precedent to the filing of this lawsuit have been fulfilled.

34. In or around September 2017, two of her coworkers began harassing Plaintiff on a continuing basis, due to her sex. For example, Ms. Hernandez's coworkers made repeated comments about her body and her age, commenting that women her age were more "womanly."

35. On a continuing basis, these employees of Defendants made offensive comments and "jokes" asking Ms. Hernandez, for instance, about her sexual preferences and her preferences regarding male genitalia.

36. Ms. Hernandez repeatedly told her two co-workers that their remarks and the suggestive manner of their speaking bothered and offended her.  When the harassing behavior persisted, Ms. Hernandez complained to her supervisors, on or about October 2, 2017 .

37. Rather than take immediate corrective action, Defendants removed Ms. Hernandez from the crew and placed her in a new work group.  Defendants failed to correct the two employees who had engaged in the harassment or remind or educate any of their employees of the obligation to ensure a non-discriminatory non-harassing workplace.

38. Ms. Hernandez continued to be subject to harassment by other co-workers in the new work group.

39. When Ms. Hernandez encountered harassing conduct in her new work group she alerted her supervisors of the problem on or about October 11, 2017.

40. Rather than take immediate corrective action, her supervisors responded that the only options were for the Defendants to fire both the harassers **and** Ms. Hernandez, or for her to learn to get along as co-workers.

41. That same day, Ms. Hernandez raised concerns about this response with the Director of Security/Job Safety for the General Contractor on site, The Beck Group (Beck).  Beck's Director of Security failed and refused to take any action.

42. Ms. Hernandez' supervisors from MDI and UBS confronted and reprimanded her for raising her concerns with Beck.

43. The next day, on or about October 12, 2017, Ms. Hernandez' supervisors from UBS had a morning meeting in which they announced that, as a result of sexual harassment complaints, males were no longer permitted to speak to females – and that workers would be fired if they failed to obey that rule.  This prohibition harmed Ms. Hernandez and the other female employees disproportionately because the overwhelming majority of workers on the site were males, with whom they needed to communicate to do their jobs.

44. The next morning, on October 13, 2017, Defendant's summarily fired Ms. Hernandez.

EXHIBIT A

## CLASS ACTION ALLEGATIONS

45. Pursuant to C.R.C.P. 23, Plaintiff Hernandez seeks to bring her Fifth Claim for Relief under the Colorado Wage Claim Act on behalf of the following class:

> All individuals employed by MDI as construction laborers at the Colorado Mills Mall project during 2017.

46. The named Plaintiff worked with the other members of the alleged class, and shared common terms and conditions of employment with them. The named Plaintiff suffered the same harms, flowing from the same omissions by Defendants, as did the other members of the alleged class.

47. The proposed class is so numerous that joinder of all members is impracticable.  While Defendant has superior access to information regarding the number of workers it employed, there are over 150 such workers similarly situated to the Plaintiff.

48. There are myriad questions of law and fact common to the class, as all claims are based on common obligations and common conduct. Common questions of fact and law include whether Defendants jointly employed the class members; whether Defendants reported the chargeable wages paid to the Plaintiff class to the Colorado Department of Labor and Employment, Division of Unemployment Insurance; and whether the failure to pay unemployment insurance premiums predicate to a worker's claim for benefits is a failure to pay full "wages or compensation" due for labor rendered under the Colorado Wage Claim Act, C.R.S. § 8-4-101 *et. seq.*

49. The claims presented by the putative class representative are typical of those possessed by all members of the proposed class.  The named representative was prejudiced by Defendants' uniform failure to report chargeable wages paid and to pay unemployment insurance premiums on those wages.  The named Plaintiff was prejudiced by Defendants' omissions because they reduced the base period wages recognized as qualifying her for receipt of unemployment insurance benefits.  These omissions prejudiced all members of the proposed class, as they did the named representative.

50. The representative Plaintiff will fairly and adequately protect the interests of the class.  The claims of the putative class representative are in no way antagonistic to those of the members of the absent class.  The representative Plaintiff will litigate her claims fully.  The representative Plaintiff is represented by counsel experienced in the class action litigation of wage claims.

51. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct.  If Defendants' failure to report chargeable wages and pay attendant unemployment insurance premiums was unlawful as to the representative Plaintiff, it was unlawful as to all members of the proposed class.  If Defendants' conduct was lawful, it was lawful as to all

**EXHIBIT A**

members of the proposed class. Multiple adjudications of these questions can only create confusion.

52. The Defendants have acted and refused to act on grounds generally applicable to all members of the proposed class. Defendants acted on the same grounds with respect to the entire proposed class.

53. As set forth above, questions of law and fact common to the class predominate over any questions affecting only individual members. For reasons of efficiency and judicial economy, the class action vehicle is the superior manner of adjudication in this case.

54. Plaintiff is unaware of any members of the putative class who are interested in presenting their claims in a separate action.

55. Plaintiff is unaware of any litigation concerning this controversy which has already been commenced by any member of the class.

56. The concentration of all claims arising from this controversy in this forum is desirable because all claims across this alleged class arose in Jefferson County.

57. No significant difficulties are likely to be encountered in the management of this class action. The contours of the class will be easily defined and notice will be easily distributed. Defendants recently employed, all members of the putative class. Wage and tax records Defendants are required to maintain will identify the individuals affected and their mailing addresses.

### FIRST CLAIM FOR RELIEF
**Unlawful Discrimination (Hostile Work Environment) under Title VII, 42 USC 2000e**

58. Plaintiff Hernandez incorporates paragraphs 1-57 by reference.

59. Hernandez was an "employee" of Defendants within the meaning of Title VII and belongs to a class protected under the statute, namely, she is female.

60. Defendants' employees or agents subjected Hernandez to unwelcome harassment on the basis of her sex and such unlawful actions continued after she notified her supervisors of the harassing conduct.

61. The harassment to which Defendants subjected Hernandez affected a term, condition or privilege of her employment in that the harassment was so pervasive or severe as to alter the conditions of her employment and create a hostile working environment.

62. Both Defendant UBS and Defendant MDI knew or should have known of the harassment and failed to exercise reasonable care to prevent and promptly correct the harassing conduct.

**EXHIBIT A**

63. The result of the foregoing practices has been to deprive Ms. Hernandez of equal employment opportunities because of her sex, in violation of Title VII.

64. Defendants UBS and MDI, their employees and agents, engaged in these actions willfully, and with malice or reckless indifference for the federally protected rights of Ms. Hernandez under Title VII of the Civil Rights Act of 1964 as amended, 42 USC Section 2000e *et seq*.

65. As a result of Defendants' conduct, Hernandez has suffered and will continue to suffer significant injuries and losses.  Plaintiff Hernandez seeks remedies described in the Prayer for Relief below.

## SECOND CLAIM FOR RELIEF
### Retaliation under Title VII

66. Plaintiff Hernandez hereby incorporates paragraphs 1 through 65 by reference.

67. Plaintiff engaged in federally protected activity when she opposed discriminatory conduct by Defendants' employees, which she believed to be unlawful.

68. Shortly after her complaints, Defendants took materially adverse actions against Hernandez, including but not limited to terminating her employment.

69. A causal link exists between Plaintiff Hernandez' protected activity and Defendants' materially adverse actions toward Hernandez.

70. Defendants engaged in these actions willfully, and with malice or with reckless indifference to Hernandez' protected rights under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. 2000e *et seq*.

71. As a result of Defendants' conduct, Hernandez has suffered and will continue to suffer significant injuries and losses.  Plaintiff Hernandez seeks remedies described in the Prayer for Relief below.

## THIRD CLAIM FOR RELIEF
### Unlawful Discrimination (Hostile Work Environment) under
### the Colorado Anti-Discrimination Act, C.R.S. § 24-34-401 *et seq*.)

72. Plaintiff Hernandez incorporates paragraphs 1-71 by reference.

73. Defendant UBS was an "employer" within the meaning of the Colorado Anti-Discrimination Act (CADA).

74. Defendant MDI was an "employer" within the meaning of CADA.

**EXHIBIT A**

75. Hernandez was an "employee" of Defendants within the meaning of CADA and belongs to a class protected under the statute, namely, she is female.

76. Defendants' agents or employees subjected Hernandez to unwelcome harassment on the basis of her sex and such unlawful actions continued after she notified her supervisors of the harassing conduct.

77. The harassment to which Defendants subjected Hernandez affected a term, condition or privilege of her employment in that the harassment was so pervasive or severe as to alter the conditions of her employment and create a hostile working environment.

78. Both Defendant UBS and Defendant MDI knew or should have known of the harassment and failed to exercise reasonable care to prevent and promptly correct the harassing conduct.

79. The result of the foregoing practices has been to deprive Ms. Hernandez of equal employment opportunities because of her sex, in violation of CADA.

80. Defendants UBS and MDI, their employees and agents, engaged in these actions willfully, and with malice or reckless indifference to the state-protected rights of Ms. Hernandez under CADA, C.R.S. § 24-34-401 *et seq.*

81. As a result of Defendants' conduct, Hernandez has suffered and will continue to suffer significant injuries and losses.  Plaintiff Hernandez seeks remedies described in the Prayer for Relief below.

## FOURTH CLAIM FOR RELIEF
### Retaliation under Colorado Anti-Discrimination Act (C.R.S. § 24-34-401 *et seq.*)

82. Plaintiff Hernandez hereby incorporates paragraphs 1 through 81 by reference.

83. Plaintiff engaged in state-protected activity when she opposed discriminatory conduct by Defendants' employees, which she believed to be unlawful.

84. Shortly after her complaints, Defendants took materially adverse actions against Hernandez, including but not limited to terminating her employment.

85. A causal link exists between Plaintiff Hernandez' protected activity and Defendants' materially adverse actions toward Hernandez.

86. Defendants engaged in these actions willfully, and with malice or with reckless indifference to her protected rights under CADA, C.R.S. § 24-34-401 *et seq.*

87. As a result of Defendants' conduct, Hernandez has suffered and will continue to suffer significant injuries and losses.  Plaintiff Hernandez seeks remedies described in the Prayer for Relief below.

**EXHIBIT A**

### FIFTH CLAIM FOR RELIEF
**Violation of The Colorado Wage Claim Act (C.R.S. §8-4-109)**

88. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1-87 as if fully set forth herein.

89. As set forth above, Plaintiff Hernandez seeks to bring this claim on behalf of herself and of a class consisting of all individuals employed by Defendant MDI as construction laborers at the Colorado Mills Mall project during 2017.

90. Defendants UBS and MDI were "joint employers" of Plaintiff Hernandez and the members of the alleged class for the purposes of the Colorado Wage Claim Act. *See e.g.*, *Solis v. Circle Grp., LLC*, Civil Action No. 16-cv-01329-RBJ, 2017 U.S. Dist. LEXIS 51936, at *10 (D. Colo. Apr. 5, 2017).

91. Defendant UBS was Ms. Hernandez' and other putative class members' "employer" as that term is defined by the CWCA because it was a corporation which employed them in the state of Colorado. C.R.S. § 8-4-101(5).

92. Defendant MDI was Ms. Hernandez' and other putative class members' "employer" as that term is defined by the CWCA and by the Wage Order because it was an individual which employed them in the state of Colorado.  C.R.S. § 8-4-101(5).

93. Ms. Hernandez and other putative class members were Defendant UBS's "employees" as that term is defined by the CWCA because she performed labor or services for the benefit of UBS in which UBS commanded when, where, and how much labor or services would be performed. C.R.S. § 8-4-101(4).

94. Ms. Hernandez and other putative class members were Defendant MDI's "employees" as that term is defined by the CWCA because she performed labor or services for the benefit of MDI in which MDI commanded when, where, and how much labor or services would be performed. C.R.S. § 8-4-101(4).

95. During 2017, Ms. Hernandez and other putative class members were engaged in "employment" with Defendants as that term is defined by C.R.S. § 8-70-115(1).

96. Defendant UBS was an "employer" for the purposes of C.R.S. §§ 8-70-103(9) and 8-70-113(1)(a)(II) because it employed individuals for some portion of a day in over 20 calendar weeks during 2017, and because it paid wages of $1,500 or more during 2017.

97. Defendant MDI was an "employer" for the purposes of C.R.S. §§ 8-70-103(9) and 8-70-113(1)(a)(II) because it employed individuals for some portion of a day in over 20 calendar weeks during 2017, and because it paid wages of $1,500 or more during 2017.

**EXHIBIT A**

98. Defendant UBS was an "employing unit" during 2017 for the purposed of C.R.S. § 8-70-114(1) because it was a domestic corporation which employed one or more individuals performing services within this state.

99. Defendant MDI was an "employing unit" during 2017 for the purposed of C.R.S. § 8-70-114(1) because it was a domestic corporation which employed one or more individuals performing services within this state.

100.    Plaintiff Hernandez and the members of the alleged class are "deemed to be employed by" UBS for the purposes of C.R.S. § 8-70-114(1) because they were employed to perform or assist in the work of any UBS employee.  It is immaterial whether Plaintiff Hernandez and the members of the alleged class were hired or paid by UBS, because UBS had actual or constructive knowledge of the work they performed.  C.R.S. § 8-70-114.

101.    Defendant UBS "shall be considered to be the employing unit" of Plaintiff Hernandez and the members of the alleged class because MDI did not meet the requirements of C.R.S. § 8-70-114(2).

102.    Defendant UBS assigned and supervised the work Plaintiff Hernandez and the other members of the class did at the Colorado Mills Mall project.

103.    Defendant MDI paid the Plaintiff and the other class members wages for their work at Colorado Mills in cash and reported neither the workers' chargeable wages nor the fact of their employment to the Colorado Department of Labor and Employment, Division of Unemployment Insurance.

104.    Upon information and belief, neither MDI nor UBS reported the chargeable wages nor the employment of Plaintiff Hernandez and others similarly situated to the Colorado Department of Labor and Employment, Division of Unemployment Insurance.

105.    Defendant UBS was required to pay unemployment insurance premiums for wages paid to Plaintiff Hernandez and the other members of the alleged class for work on the Colorado Mills Mall project.  C.R.S. § 8-76-101.

106.    Defendant MDI was required to pay unemployment insurance premiums for wages paid to Plaintiff Hernandez and the other members of the alleged class for work on the Colorado Mills Mall project.  C.R.S. § 8-76-101.

107.    Upon information and belief, neither MDI nor UBS paid required unemployment insurance premiums for Plaintiff Hernandez and the other members of the alleged class. C.R.S. § 8-76-101, *et. seq.*  As a result, Plaintiff Hernandez and other class members were not credited for base period wages necessary to qualify for Unemployment Insurance Benefits.  C.R.S. § 8-73-107(1)(e).

**EXHIBIT A**

108.    When Defendants failed to pay required unemployment insurance premiums for Plaintiff Hernandez and the other members of the alleged class, they failed to pay all "compensation for labor or service earned, vested, determinable, and unpaid at the time of… discharge". C.R.S. § 8-4-109.

109.    Upon information and belief, Defendants' failure to pay these premiums for Plaintiff Hernandez and the other members of the class was willful.

110.    Plaintiff Hernandez and others suffered harms as a result of Defendants' conduct.

111.    Plaintiff and others are entitled to recovery of the compensation Defendants unlawfully denied them. C.R.S. § 8-4-109; C.R.S. § 8-4-110

112.    Plaintiff and others are entitled to recovery of additional penalties pursuant to C.R.S. § 8-4-109(b)(I).

113.    Plaintiff and others are entitled to recovery of additional penalties pursuant to C.R.S. § 8-4-109(c).

114.    Plaintiff and others are entitled to recover the reasonable costs and attorney fees incurred in bringing this action. C.R.S. § 8-4-110(1).

## **PRAYER FOR RELIEF**

**Wherefore**, Plaintiff Hernandez requests that the Court find Defendants in violation of Title VII and CADA, enter an order judgment in her favor awarding the following relief to the fullest extent allowed by law:

    A.  Back pay, in amounts to be determined at trial;
    B.  Front pay, in lieu of reinstatement;
    C.  Compensatory damages under Title VII;
    D.  Equitable relief, to be determined at trial;
    E.  Pre-judgment and post-judgement interest at the highest lawful rate;
    F.  Attorneys' fees and costs under Title VII; and
    G.  All such further relief as justice allows.

**And wherefore**, Plaintiff Hernandez on behalf of herself and others similarly situated (collectively the "Plaintiffs"), respectfully request that the Court enter judgment in their favor as to the Fifth Cause of Action for violation of the CWCA, set forth in paragraphs 88-114, and award the following relief to the fullest extent allowed by law:

    A.  The balance of unpaid unemployment insurance premiums C.R.S. § 8-4-109;
    B.  Penalties as specified in C.R.S. §§ 8-4-109(3)(b) and 8-4-109(3)(c);
    C.  Reasonable costs and attorneys' fees pursuant to C.R.S. § 8-4-110(1); and

**EXHIBIT A**

D.  All such other relief as may be necessary and appropriate.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

DATED this 14th day of June 2018.

Respectfully submitted,

*/s/ Andrew H. Turner*
Signed original on file and available for inspection at:
Andrew H. Turner
Atty. Reg. #43869
M. Jeanette Fedele
Atty. Reg. # 47256
THE KELMAN BUESCHER FIRM
600 Grant Street, Ste. 450
Denver, CO  80203
Tel:  303-333-7751
Fax:  303-333-7758
aturner@laborlawdenver.com
jfedele@laborlawdenver.com

ATTORNEYS FOR PLAINTIFF

Plaintiff's Current Address:
7911 Panther Pass
San Antonio, TX  78254

**EXHIBIT A**